February 25, 1907.)

## LEE E. YOUNG, Respondent, v. EXTENSION DITCH CO., Appellant.

[89 Pac. 296.]

INJURY TO LAND—EVIDENCE—DAMAGES—MEASURE OF—TOTAL DESTRUC-
TION OF—RENTAL VALUE OF.

1. *Held,* that the evidence fails to show total destruction of the value of the land in controversy.

2. In actions of this kind, the principle of actual compensation governs, and the damages awarded must be confined to the actual damages sustained.

3. Such damages must be proved with some degree of certainty, and cannot be left to the guess, conjecture or speculation of the jury, as in cases of tort against the person.

4. If land is taken or the value thereof totally destroyed, the owner is entitled to recover the actual cash value of the land at the time of the taking or destruction, with legal interest thereon to the time of the trial.

5. If the land is permanently injured, but not totally destroyed, the owner will be entitled to recover the difference between the actual cash value of the land at a time immediately preceding the consummation of the injury and the actual cash value of the land in the condition it was immediately after the injury, with legal interest thereon to the time of the trial.

6. If land is temporarily, but not permanently, injured, the owner is entitled to recover the amount necessary to repair the injury, with legal interest thereon to the time of the trial.

7. Where the land is not injured, but the owner is prevented from raising a crop, the rental value of the land, with legal interest thereon, is the measure of damages.

(Syllabus by the court.)

APPEAL from the District Court of the Seventh Judicial District, for Canyon County.  Hon. Frank J. Smith, Judge,

Action to recover for damages to land.  Judgment for plaintiff.  *Modified.*

..... . ..

Richards & Haga, for Appellant.

In actions of this kind the *principle of actual compensation governs,* and the damages awarded must be confined to the actual damages sustained, which must be proven with some degree of certainty and cannot be left to the guess or speculation of the jury, as in case of torts against the person. (8 Am. & Eng. Ency. of Law, 611, 612; 28 Am. & Eng. Ency. of Law, 604-606, and cases there cited; 1 Sutherland on Damages, 3d ed., sec. 105.)

If land is *taken* or the value thereof *totally destroyed* by the negligence or wrongful act of another, the owner is entitled to recover the actual cash value of the land at the time of the taking  or destruction of its value, with legal interest to the time of the trial.

If land is *permanently injured,* but the value not totally destroyed, by the negligence or wrongful act of another, the owner would be entitled to recover the difference between the actual cash value at the time immediately preceding the injury and the actual cash value of the land in the condition it was in immediately after the injury, with legal interest to the time of the trial.

If the land is *temporarily,* but not permanently, *injured* by the negligence or wrongful act of another, the owner is entitled to recover the amount necessary to repair the injury and put the land in the condition it was in at the time immediately preceding the injury, with legal interest to the time of the trial. (*Trinity & S. Ry. Co. v. Schofield,* 72 Tex. 496, 10 S. W. 575; *Ft. Worth etc. Ry. Co. v. Hogsett,* 67 Tex. 685, 4 S. W. 365; *St. Louis etc. Ry. Co. v. Morris,* 35 Ark. 622; *Louisville etc. Ry. Co. v. Sparks,* 12 Ind. App. 410, 40 N. E. 546; *Drake v. Chicago etc. Ry. Co.,* 63 Iowa, 302, 50 Am. Rep. 746, 19 N. W. 215; *Sullens v. Chicago etc. Ry. Co.,* 74 Iowa, 659, 7 Am. St. Rep. 501, 38 N. W. 545; *Higgins v. New York etc. Co.,* 29 N. Y. Supp. 563, 78 Hun, 567; *Chicago & I. R. Co. v. Baker,* 73 Ill. 316; *Ownes v. M. P. Ry. Co.,* 67 Tex. 679, 4 S. W. 593; 6 Thompson on Negligence, 7228, 7229, 7232; 13 Cyc. 152, 153.)

Damages must be reckoned as of the time of their occurrence. (*Van Pelt v. City of Davenport*, 42 Iowa, 308, 20 Am. Rep. 622, and cases cited, supra.)

When rental value is taken as a basis for damages, it must be fixed at the difference between the rental value immediately before and immediately after the flooding. (*Reichert v. Backenstross*, 71 Hun, 516, 24 N. Y. Supp. 1009; *Adams v. Durham etc. Co.*, 110 N. C. 325, 14 S. E. 857.)

If there be no evidence of injury to the surface upon the land, or the soil, there is no evidence to warrant damages for permanent injury. (*Gulf etc. Ry. Co. v. Hepner*, 83 Tex. 136, 18 S. W. 441.)

A verdict for damages must be supported by evidence as to the amount of damages sustained. There must be some basis for the approximation made, and proof of the value of the land without showing the deterioration or decrease in value caused by the wrongful acts of the defendant is too indefinite to sustain a verdict. (*Texas & P. Ry. Co. v. Dunn* (Tex.), 17 S. W. 822; *Green v. Taylor etc. Co.*, 79 Tex. 604, 15 S. W. 685; *Watson v. Colusa-Parrot M. & S. Co.*, 31 Mont. 513, 79 Pac. 14; *Smith v. Philadelphia etc. Ry. Co.*, 57 Fed. 903; *Beidler v. Sanitary Dist.*, 211 Ill. 628, 71 N. E. 1118, 67 L. R. A. 820, 843; *Waldrop v. Greenwood etc. Co.*, 28 S. C. 157, 5 S. E. 471; *Western Union Tel. Co. v. Brown*, 62 Tex. 536.)

Stone & Maclane and Walter Griffiths, for Respondent.

Where there is evidence to support the verdict, or there is a substantial conflict, the verdict of the jury will not be disturbed. (*Gumaer v. White Pine Lumber Co.*, 11 Idaho, 591, 83 Pac. 771; *Hansen v. Haley*, 11 Idaho, 238, 81 Pac. 935.)

Rental value is the true measure of damages for the deprivation of the use of land caused by flooding. (*City of Chicago v. Huenerbein*, 85 Ill. 594, 28 Am. Rep. 626; *Kankakee & S. R. Co. v. Horan*, 17 Ill. App. 650; *City of South*

*Bend v. Paxon*, 67 Ind. 228; *Reichert v. Backenstross*, 71 Hun, 516, 24 N. Y. Supp. 1009.)

The question of the amount of recovery is one of fact for the jury, and unless they are influenced by passion or prejudice, or exceed in their computation any possible view of the evidence, their judgment, especially when approved by the trial court, is conclusive, and their verdict is not subject to review. The authorities in support of this proposition are so numerous and uniform that it is impossible to even try to cite them. They will be found collated in volume 3, Century Digest, columns 1825, 1826, 1827, 1828.)

The jury, had they been influenced by passion or prejudice, might, under the pleadings, have returned a verdict for $4,000. This they did not do, but, in assessing damages, kept within the evidence. (*Cox v. Northwestern Stage Co.*, 1 Idaho, 376.)

SULLIVAN, J.—This action was commenced by the respondent on the twenty-fourth day of March, 1904, to recover damages alleged to have been sustained during the three years preceding the commencement of the action, for alleged injury to about fifty acres of farm land by the discharge of an excessive amount of water over and on said land from a ditch designated as a "waste ditch," constructed by and belonging to the appellant, in a careless, negligent and unworkmanlike manner; that because of the water from said ditch flowing upon said land, certain ponds and lakes were formed on said land and the water filtered through the soil and made the same wet and swampy, and caused alkali and other bases to rise and appear in damaging quantities upon the surface of said land, and has caused large quantities of tules and other noxious weeds to grow upon said land; that by reason of which said land has been rendered incapable of cultivation, and the use and profit thereof permanently destroyed to the damage of the plaintiff in the sum of $2,000, and his crops and labor on the same during the

cropping season of 1901-02 and '03, in the sum of $2,000, and prays for judgment in the sum of $4,000.

Many of the material allegations of the complaint are denied by the answer, and as a separate defense it is averred that there was a contract between the respondent and the appellant, whereby the former agreed to extend said waste ditch to his own satisfaction, and that any injury suffered by respondent therefrom was the result of his own failure to fulfill his contract.

A third defense sets forth a prescriptive right in appellant to maintain its waste ditch, and alleges that respondent had violated that right by obstructing the ditch, and avers that if any injury was suffered by respondent, it is the result of his own wrongful acts. The cause was tried upon the issues thus made to a jury and the jury returned a verdict in favor of the plaintiff for $1,750, for which amount judgment was entered. Appellant's motion for a new trial was overruled. The appeal is from the judgment and from the order denying a new trial. Numerous errors are assigned, and among them the insufficiency of the evidence to justify the verdict, and it is contended by counsel for the appellant that the verdict in this case is grossly excessive, and shows on the part of the jury such a reckless disregard of the evidence as to indicate that it was rendered through passion and prejudice.

In order to decide this contention, we shall have to review the evidence in the case. The evidence clearly shows that the land in question consisted of about forty-five acres, and is very low land, and is flooded or overflowed at times by the Snake river; that there are several sloughs running across said land which contain some water during the greater portion of the year, and a small lake thereon; it also appears that water comes within two and a half or three feet of the surface, as shown by well on said land, which well is not in the lowest part of said land; that there is a bench some twenty feet high above the land on the easterly side thereof, and that portions of the land on this bench have been cultivated and irrigated; that along the foot of the bench considerable water seeps out on the land in question; that a

large scope of country surrounding said land drains onto it; that defendant's main ditch extends along the edge of said bench and easterly from this land a wastegate was placed in said main ditch and a waste ditch constructed along the easterly and southerly sides of said land; that said waste ditch was constructed to a certain point by the defendant, and the evidence shows that from that point to a certain levee constructed for the purpose of keeping the floodwater from Snake river from flowing upon said land, the defendant constructed said waste ditch; that thereafter complaint was made to the defendant that the flowing water in said ditch was running down upon said land; that a contract was thereupon entered into with the plaintiff, whereby he agreed to extend said ditch in a manner satisfactory to himself, and that he thereafter reported that he had so extended said ditch and the defendant paid him for the work so done.

The record contains evidence to the effect that at times when a large amount of water was turned into said waste ditch it overflowed on the side next to respondent's land and run off upon said land; it also appears from the evidence that since the construction of said waste ditch the land in question has become more wet and swampy than it was be-fore, and it is the opinion of some of the witnesses that that condition was caused partly, at least, by the irrigation of the surrounding land which sloped toward the land in question.

It appears that very little, if any, crop has been raised on said land for the last three years, covering the period for which damages are sought to be recovered. This action seems to have been brought by the plaintiff upon the theory that the value of his land was totally destroyed, at least it is alleged in the complaint that said lands have been and are rendered "incapable of cultivation and their use and profit to plaintiff permanently destroyed." It is also alleged that "the said water from the said waste ditch has formed into ponds or lakes on the said land of plaintiff and has filtered and seeped through, down to, under, in and upon said land of plaintiff, and made the same wet and swampy, and has

caused alkali and other bases to rise and appear in damaging quantities upon the surface of said land.''

The evidence of the plaintiff shows that for the period covered by the complaint said land had become more wet and swampy than it was prior thereto. But there is no evidence whatever sustaining the allegation that by reason thereof alkali and other bases were caused to rise and appear in damaging quantities upon the surface of said land, and there is no evidence showing that the use or value of said land has been permanently destroyed.

Conceding the evidence sufficient to show that all of the extra water that had flowed upon said land during the three years prior to the commencement of this action flowed from said waste ditch, there is nothing in the evidence to show but what if that waste ditch was so constructed as to carry off all of the water turned therein, that said land would become as dry and produce as profitable crops as it did for the years prior to 1901. ˙ In other words, the evidence does not show the destruction of the land, and, in fact, the evidence tends to show that with very little expense the waste ditch could be made of sufficient capacity to carry off all the waste water from the defendant's ditch. The respondent himself testified that the waste ditch would drain the land if enlarged and kept open, and one of his witnesses testified that it would not cost much to make the enlargement, and one of the witnesses for appellant testified that if the respondent had opened the waste ditch and cut it deeper, it would have drained off the land. Considering the condition and location of this land and its position in relation to the Snake river and other land, the evidence relating thereto clearly indicates that said land can be drained of all waste water carried upon it by said waste ditch at a small expense.

The evidence shows that the land in question is more or less affected by irrigated land above it, and that as more of the high land is irrigated, the land in question becomes more wet and swampy. The evidence shows that several of respondent's neighbors' waste water flows upon his low land. It also appears that the water from melting snows and rain

water from a large section of the country drains upon these low lands, and that said low lands are subject to inundation from Snake river; that of late years a levee has been constructed in an attempt to prevent the flooding of said land from that river. It appears that as late as the spring of 1904 the river again overflowed this land. The waste water from defendant's bench land flows upon the land in question, and thus it is made to appear that the waste water from other people's land as well as some of the waste water from appellant's ditch has contributed to the present swampy condition of said land. The evidence as to damage to the land from the overflow of said waste ditch is uncertain and unsatisfactory.

One of the witnesses testified that said land without a water right would be worth from $15 to $20 per acre, and with the water right from $25 to $40 an acre, "owing to the state of cultivation it would be in." He also testified that the condition of the land on or about the 1st of March of that year (1904) was not worth anything to speak of. The same witness also testified that land of that character susceptible to grown a crop would be worth from $3 to $7 per acre rental, including the water right, and on cross-examination that witness testified as follows: "It would be my judgment that all of that lower land together under the bench would be worth $3 at that time, reasonable rental value." Another witness on behalf of the plaintiff testified as follows: "I claim if it was all in good cultivation it ought to be worth $25 or $30."

That evidence only goes to the full value and rental value of the land. The evidence does not clearly show to what extent the land has been temporarily injured by reason of its being made more wet and swampy by the water escaping from said waste ditch for the three years prior to the commencement of this action, any further than to show the land was too wet to raise a crop. Nor is there any evidence showing, or even tending to show, that said land would not become sufficiently dry to produce a crop the coming season, provided no water from said waste ditch or elsewhere flowed on said land.

The evidence does not show permanent injury to or total destruction of. the value of the land. It only goes to the full value and rental of the land. There is no evidence as to what extent the land has been temporarily injured by reason of its being made more wet and swampy by water escaping from said waste ditch for the three years immediately prior to the commencement of this action.

In actions of this kind, the principle of actual compensation governs, and the damages awarded must be confined to the actual damages sustained. Such damages must be proven with some degree of certainty, and cannot be left to the guess. conjecture or speculation of the jury, as in cases of tort against the person. (28 Am. & Eng. Ency. of Law, 604; 1 Sutherland on Damages, 3d ed., 105.) If land is taken or the value thereof totally destroyed, the owner is entitled to recover the actual cash value of the land at the time of the taking or destruction with legal interest thereon to the time of the trial.

If the land is permanently injured but not totally destroyed, the owner will be entitled to recover the difference between the actual cash value at a time immediately preceding the injury and the actual cash value of the land in the condition it was immediately after the injury, with legal interest thereon to the time of the trial.

If the land is temporarily but not permanently injured, the owner is entitled to recover the amount necessary to repair the injury and put the land in the condition it was at the time immediately preceding the injury, with legal interest thereon to the time of the trial. (6 Thompson on Negligence, 7228 et seq.; 13 Cyc. 152.)

In this class of cases, a verdict for damages must be supported by evidence as to the amount of damages sustained. There must be some basis for the approximation made. Proof of the value of the land without showing the deterioration or decrease in value caused by the wrongful acts of the defendant is too indefinite to sustain a verdict. That being true, in the case at bar, where the evidence does not show that the value of the land has been totally destroyed by the

acts of the defendant, evidence that shows the value of the land but fails to show the amount of injury done to the land, or the amount necessary to repair the injury and put the land in its former condition, is too indefinite to sustain a verdict for such injury.

As before stated, certain witnesses testified as to the value of the land, but there is no evidence in the record whatever tending to show the amount of injury done to the land by water escaping over and upon it from the appellant's waste ditch, and it is clear from all of the evidence that the value of this land has not been totally destroyed; hence, it was necessary, if plaintiff desired to recover for injury done to the land, to show such injury, and the sum that would be required to repair such injury or place the land in its former condition; or, in other words, the value of the injury.

We think it well established by the authorities that for temporary injuries to land where one is simply prevented from raising a crop, the rental value is the proper measure of damages. There being no direct evidence whatever in the record as to the amount of injury to said land as a whole or per acre, and the evidence clearly indicates that the value of the land has not been totally destroyed, the jury was not justified by any evidence in the record whatever in returning a verdict against the defendant for $1,750.

From an examination of the whole record, the court has concluded that the verdict and judgment should be reduced to $1,000, and the judgment will be affirmed for that amount, if the respondent files his written waiver or release of said judgment for the excess over and above that sum, within twenty days after the *remittitur* is filed in the court below; otherwise a new trial must be granted; and in case such a release is filed with the clerk of the district court within the time mentioned, judgment will be affirmed for the sum of $1,000.

Each party must pay one-half of the costs of this appeal in case the judgment is affirmed for $1,000, and in case a new trial is had, costs are awarded to the appellant.

Ailshie, C. J., concurs.

(March 27, 1907.)

ON PETITION FOR REHEARING.

Per CURIAM.—A petition for rehearing has been filed in this case, and contains no points except those fully considered on the original hearing of the case. However, in the original opinion we divided the costs between the respective parties, and as the appellant succeeded in greatly reducing the judgment, we think, on a reconsideration of that matter, the appellant is entitled to its costs, and the judgment is modified to that extent.

Costs of this appeal are, therefore, awarded to the appellant.

Petition for a rehearing denied.