.An examination of the charge shows that the objections thereto are not well founded.

There is no prejudicial error apparent upon the face of the record. The judgment will therefore be affirmed.

*Judgment affirmed.*

ALLREAD and FERNEDING, JJ., concur.

WILLIAMS, J., of the Sixth Appellate District, sitting in place of KUNKLE, J., of the Second Appellate District.

THE JAMES H. HERRON Co. *v.* JONES.

(Decided November 14, 1927.)

*Mr. Paul S. Crampton* and *Mr. Harry C. Gahn,* for plaintiff in error.

*Messrs. Boyd, Cannon, Brooks & Wickham,* for defendant in error.

SULLIVAN, P. J. This cause is here on error, and it is charged that the judgment should be reversed because a certain lease was assigned and sublet, contrary to a provision to that effect, and that certain evidence of an incompetent nature was offered under objection, as bearing upon the measure of damages for breach of contract, and, further, that the court erred in overruling the motion for a new trial. These are the main grounds of error argued, although there are many more assignments mentioned in the motion for a new trial.

The plaintiff below was William F. Jones, and the defendant was the James H. Herron Company, a corporation, and the substance of the allegations of the petition is that the James H. Herron Company prior to May 26, 1923, had taken a lease for a term of years on certain premises at West Third street, Cleveland, Ohio, and on the date of the execution of this lease one A. D. Goodman occupied a portion of the first floor of the building as a cigar store. After occupying it for several years, his lease was to expire about July 1, 1923. The balance of the floor

partially occupied by Goodman had been occupied prior to the above date by the Erie Commissaries, and was also subject to re-renting after July 1, 1923.

It is further alleged that the plaintiff, William F. Jones, and the defendant, the James H. Herron Company, entered into a written contract, under the terms of which the defendant was to lease to the plaintiff the first floor and a quarter of the basement of the building, located at the southwest corner of St. Clair avenue and West Third street, and the consideration agreed upon was $4,000 per year, payable in certain installments.

The petition further alleges that in June, 1923, on various occasions, plaintiff demanded a lease under the terms of the contract, and alleges that the defendant refused to execute one, and that on June 30, 1923, plaintiff prepared a lease embodying the terms of the aforesaid written contract, which plaintiff desired and offered to execute, but that the defendant refused to attach the signature of the corporation to it.

The written contract of May, 1923, in our judgment, according to the record, substantially embodied the terms upon which the lease was to be based, and, in substance, comprised all the essential terms necessary for such a contract, and this bears upon one of the salient features of the case, that is, whether there were any terms to be understood, agreed upon, and fulfilled, because whether such a situation existed depended upon the plaintiff's right to have a lease based upon the terms of the contract and in pursuance thereof.

In the meantime, subsequent to entering into the contract for the lease, the plaintiff executed a written

contract with one A. D. Goodman to assign the lease
or sublet the premises to Goodman for a considera-
tion of $3,000 over and above the rentals, and cer-
tain other expenses as mentioned in the contract for
the lease; and the further claim is made that the as-
signment of subletting was to be strictly in accord-
ance with the terms of the lease to be executed.

Subsequently, according to the allegations of the
petition, the defendant having learned of said con-
tract for a lease with said Goodman, refused to
execute a lease according to the terms of the contract
heretofore mentioned, unless the plaintiff would
agree to pay the corporation a portion of said sum
to be paid by Goodman in excess of the rental and
other expenses provided in the terms of the lease,
which proposition plaintiff refused, and it is alleged
that on June 30, 1923, the defendant entered into a
contract of lease with the said Goodman, wherein
the premises desired were leased to Goodman direct,
by which act it is claimed that the plaintiff was de-
prived of his profit of $3,000 on said lease.

As to the first ground of error we have already
stated that in our judgment the understanding be-
tween the parties was substantially set forth in the
contract upon which the lease was sought to be
based. There was no inhibition in the terms of the
contract above noted against subletting or assigning
the lease, and, while a penciled memorandum ap-
pears tending to that effect, it is our judgment, from
the record, that it is not founded upon such authority
as would be required to have a meeting of the minds,
and consequently is of no material avail in the
record, on account of its vagueness and uncertainty.

The defendant, the James H. Herron Company,

filed an amended answer and cross-petition. The first defense denied each and every allegation of the petition, and the second defense is that there could be no subleasing or assignment without the consent of the James H. Herron Company, but, as before said, we think that the proof fails to show that there was any understanding in the original contract that such terms were agreed upon, or were to become part and parcel of the contract upon which the lease might be founded. Hence we think there is no prejudicial error in this record, and the reason is that the terms of the contract had been substantially completed, and, without an express inhibition against subletting or assigning, claims based upon such propositions would be without foundation in law.

We think the following authorities substantiate our views herein expressed:

In *Hampshire* v. *Wickens*, 47 L. J. Ch., 243, 38 Law T., 408, 15 English Ruling Cases, 699, the court said:

"That was a very special and very unusual covenant, but it is said that it is less extensive than a general covenant not to assign at all, and that if no objection can be made to an unrestricted covenant against assignment none can be made to a covenant that is restricted. I think that reasoning is sound, and shall therefore consider whether an unrestricted covenant not to assign can be inserted among 'usual covenants.' I am of opinion that it cannot."

In *Crowe* v. *Riley*, 63 Ohio St., 1, 9, 57 N. E., 956, appears the following:

"The lease contained no restriction against assignment thereof, and it was, therefore, assignable."

In *Braunstein, Inc.*, v. *McGrory Stores Corp.*, 93

N. J. Eq., 419, 116 A., 707, the syllabus, as reported in 23 A. L. R., 133, reads:

"A lessee may assign his lease in the absence of express provision in the lease to the contrary."

We cite the foregoing case because of the following note attached thereto (23 A. L. R., 136), which cites cases from nearly all the states in support of this ruling:

"It is well settled that, in the absence of restrictions thereon by the parties, or of statutory prohibitions, a tenant under a lease for a definite period may assign his lease or sublet the premises in whole or in part."

Evidence was offered to show the measure of damages by reason of the failure of Jones, the plaintiff below, to effect a lease with Goodman because of the fact that the James H. Herron Company had leased to him direct, after the agreement for a lease had been made between Jones and Goodman. The difference between the rent that was to be received and the annual value of the term is a proper consideration for the measure of damages, and on this point the following authorities bear us out:

"Now, if the contract which we have before us was an agreement for a lease, the rule of damages usually applied to such agreements is the difference between the rent the tenant agrees to pay, and the annual value of the term; and special damages may be awarded also for expenses necessarily incurred, which, by reason of the disappointment, are lost." *Taylor* v. *Bradley*, 39 N. Y., 129, 142, 100 Am. Dec., 415.

"The measure of damages for the owner's failure to give the lease in accordance with the agreement has been held or stated to be the difference between

the rent agreed on and the actual rental value of the premises at the time of the breach.'' 35 Corpus Juris, 1209.

Where a lessor breached his agreement to give a lease to a prospective lessee, but no rent was paid, and nothing further appeared, the measure of damages for the lessor's breach was held to be the difference between the actual value of the leasehold estate and the agreed rental and the value meant the value for all uses to which the property was adapted, and, where the property was capable of being used in some particular way, and had an enhanced value by reason thereof, the value to be ascertained was the value thus enhanced. *Neal* v. *Jefferson,* 212 Mass., 517, 99 N. E., 334, 41 L. R. A. (N. S.), 387, Ann. Cas., 1913D, 205.

In an action by a lessee against a lessor for breach of a covenant to give possession, although there was no fraud or wrong conduct, the measure of damages was held to be the value of the lease. *Snodgrass, King's Admr.,* v. *Ryenolds,* 79 Ala., 452, 58 Am. Rep., 601.

In *Smith* v. *Hughey,* 66 Or., 408, 134 P., 781, Ann. Cas., 1915B, 804, the value of the use and occupation was held to be its actual rental value in the market and the amount of the plaintiff's recovery would be that rental value, less the $600 which he had agreed to pay.

The measure of damages appears settled by practically all the authorities to be ''the difference between the rent agreed upon and the market value of the term, plus any special damages alleged and proved.'' *Sloan* v. *Hart,* 150 N. C., 269, 63 S. E., 1037, 21 L. R. A. (N. S.), 239, 134 Am. St. Rep., 911.

The testimony as to the measure of damages, offered on the part of the plaintiff below, is unchallenged, as the defendant offered no proof, relying wholly upon the questions of law involved. This class of proof was offered under the allegation contained in plaintiff's petition, as follows:

"Plaintiff says that said lease was reasonably worth the sum of $3,000 over and above all rentals and other expenses incidental to said lease, and that, by defendant's refusal to execute and deliver a lease in conformity to the terms of said written contract, he has been damaged in the sum of $3,000."

Thus the proof conformed to the allegations of the petition, which we think were allegations well founded in law under the record in the case.

It is argued that the prayer of the petition asked for the sum of three thousand dollars, and that, therefore, this disregarded the measure of damages, but the fact that evidence was offered as to the measure of damages makes the subject-matter of the prayer immaterial, not only as to the case at bar, but under the general rule that a prayer is no part of the allegations of the petition. Hence we think there was no error in this respect.

Holding these views, the judgment of the lower court is hereby affirmed.

*Judgment affirmed.*

VICKERY and LEVINE, JJ., concur.